**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ANGELA SANCHEZ, individually and on behalf of all others similarly situated,<br><br>v.<br><br>STONEGATE SENIOR LIVING, LLC and STONEGATE SENIOR CARE MANAGEMENT, LP | **Case No. 3:22-cv-00864**<br>FLSA Collective Action |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1. Like many other companies across the United States, Stonegate's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Stonegate's organization.

3. As a result, Stonegate's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Angela Sanchez is one such worker for Stonegate.

5. Stonegate could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Stonegate used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Stonegate pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Stonegate made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Stonegate's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Sanchez brings this lawsuit to recover these unpaid overtime wages and other damages owed by Stonegate to them and Stonegate's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Stonegate's decision to make its own non-exempt employees workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by Stonegate to all these workers, along with the penalties, interest, and other remedies provided by federal law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14. Sanchez worked for Stonegate in this District.

## PARTIES

15. **Plaintiff Angela Sanchez** is a natural person.

16. Sanchez was, at all relevant times, an employee of Stonegate.

17. Sanchez has worked for Stonegate since January 2019.

18. Sanchez represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Stonegate who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

19. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

20. **Defendant Stonegate Senior Living, LLC** is a domestic limited liability company.

21. Stonegate Senior Living, LLC may be served by service upon its registered agent, **Capitol Corporate Services, Inc., 206 E. 9th St., Ste. 1300, Austin, TX 78701**, or by any other method allowed by law.

22. **Defendant Stonegate Senior Care Management, LP** is a domestic limited partnership.

23. Stonegate Senior Care Management, LP may be served by service upon its registered agent, **John F. Taylor, 1500 Waters Ridge Dr., Ste. 200, Lewisville, TX 75057**, or by any other method allowed by law.

24. Stonegate Senior Living, LLC and Stonegate Senior Care Management, LP employed and/or jointly employed Sanchez and the Similarly Situated Workers.

25. Stonegate Senior Living, LLC and Stonegate Senior Care Management, LP are joint employers for purposes of the FLSA.

26. Throughout this Complaint, Stonegate Senior Living, LLC and Stonegate Senior Care Management, LP are referred to jointly as "Stonegate."

27. The facilities operated by Stonegate include, but are not limited to:

- Briarcliff Skilled Nursing Center
- Settlers Ridge Care Center
- Pine Grove Nursing Center
- Adora Midtown Park
- Lakewest Assisted Living
- Simpson Place Assisted Living and Skilled Nursing
- Village at LakeWest Independent Living
- Williamsburg Village Healthcare Campus
- Villages on MacArthur
- The Plaza at Lubbock
- Baybrooke Village Care and Rehabilitation Center
- Accel Rehabilitation Hospital of Plano
- Accel at Willow Bend
- Colonial Pines Healthcare Center
- Heritage Plaza Nursing Center
- Reunion Plaza Senior Care & Rehabilitation Center
- Park Place Nursing and Rehabilitation Center
- Providence Park Rehabilitation and Skilled Nursing
- Garnet Hill Rehabilitation and Skilled Care
- Accel at Longmont
- Montevista Rehabilitation and Skilled Care
- Medical Park West Rehabilitation
- Accel at Crystal Park
- Noble Healthcare Center
- Tuscany Village Nursing Center
- Garland Road Nursing Center
- Highland Park Manor
- Ranchwood Nursing Center
- Meadowlake Estates Nursing Center
- The Villages at Southern Hills
- Tulsa Nursing Center
- Victorian Estates Assisted Living
- Meadowlake Retirement & Assisted Living

28. At all relevant times, Stonegate operated as an alter ego of its facilities.

29. At all relevant times, Stonegate's facilities operated as its alter egos.

30. At all relevant times, Stonegate and its facilities operated as alter egos of one another.

31. At all relevant times, Stonegate exerted operational control over each of these facilities and any of its other facilites.

32. At all relevant times, Stonegate had the authority to set pay practices at each of these facilities and any of its other facilites.

33. At all relevant times, Stonegate substantially controlled the terms and conditions of employment for workers at each of these facilities and any of its other facilites.

34. At all relevant times, Stonegate had a common control and management of labor relations regarding employees at each of these facilities and any of its other facilites.

### COVERAGE UNDER THE FLSA

35. At all relevant times, Stonegate was an employer of Sanchez within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. At all relevant times, Stonegate was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37. At all relevant times, Stonegate was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

38. During at least the last three years, Stonegate has had gross annual sales in excess of $500,000.

39. At all relevant times, Stonegate was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

40. Stonegate employ many workers, including Sanchez, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

41. The goods and materials handled, sold, or otherwise worked on by Sanchez and other employees of Stonegate and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, and telephones, computers, and office supplies and equipment.

## FACTS

42. Stonegate operates a network of nursing and rehabilitation centers.

43. Many of Stonegate's employees are non-exempt hourly and salaried workers.

44. Since at least 2021, Stonegate has used timekeeping software and hardware operated and maintained by Kronos.

45. On or about December 11, 2021, Kronos was hacked with ransomware.

46. The Kronos hack interfered with the ability of its customers, including Stonegate, to use Kronos's software and hardware to track hours and pay employees.

47. Since the onset of the Kronos hack, Stonegate has failed to keep accurate track of the hours that Sanchez and Similarly Situated Workers have worked.

48. Instead, Stonegate has used various methods to estimate the number of hours Sanchez and Similarly Situated Workers work in each pay period.

49. For example, Stonegate issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

50. As a result of Stonegate's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

51. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

52. Sanchez is one of many of Stonegate's employees affected by these pay and timekeeping practices.

53. Instead of paying Sanchez for the hours she actually worked (including overtime hours), Stonegate simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Sanchez's actual hours worked and regular pay rates, in multiple workweeks.

54. In some instances, Sanchez was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times the agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

55. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

56. Stonegate knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

57. Stonegate knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

58. Stonegate could has instituted any number of methods to accurately track and timely pay its employees for all hours worked.

59. Instead of accurately tracking hours and paying employees its overtime, Stonegate decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

60. Even to the extent it did pay some overtime to affected employees, Stonegate failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Stonegate did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

61. It was feasible for Stonegate to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

62. But Stonegate chose not to do that.

63. In other words, Stonegate pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

64. Sanchez is just one of the many employees of Stonegate who had to shoulder the burden of this decision by Stonegate.

65. Sanchez was a non-exempt hourly employee of Stonegate and Simpon Place.

66. Sanchez regularly worked over 40 hours per week for Stonegate.

67. Sanchez's normal, pre-Kronos hack hours are reflected in Stonegate's records.

68. Since the Kronos hack, Stonegate has not paid Sanchez for her actual hours worked each week.

69. Since the hack took place, Stonegate has not been accurately recording the hours worked by Sanchez and its other workers.

70. Even when Stonegate has issued payment to Sanchez for any overtime, the overtime is not calculated based on Sanchez's regular rates, as required by federal law.

71. Stonegate was aware of the overtime requirements of the FLSA.

72. Stonegate nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Sanchez.

73. Stonegate's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

74. The full overtime wages owed to Sanchez and the Similarly Situated Workers became "unpaid" when the work for Stonegate was done—that is, on Sanchez and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

75. At the time Stonegate failed to pay Sanchez and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Stonegate became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

76. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

77. Even if Stonegate made any untimely payment of unpaid wages due and owing to Sanchez or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

78. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

79. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Stonegate's acts and omissions resulting in the unpaid wages in the first place.

80. Sanchez and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Stonegate under federal law.

## COLLECTIVE ACTION ALLEGATIONS

81. Sanchez incorporates all other allegations.

82. Numerous individuals were victimized by Stonegate's patterns, practices, and policies, which are in willful violation of the FLSA.

83. Based on her experiences and tenure with Stonegate, Sanchez is aware that Stonegate's illegal practices were imposed on the FLSA Collective.

84. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

85. These employees are victims of Stonegate's unlawful compensation practices and are similarly situated to Sanchez in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

86. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

87. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

88. Stonegate's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

89. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### Cause of Action—Overtime Violations of the FLSA

90. Sanchez incorporates each other allegation.

91. By failing to pay Sanchez and the FLSA Collective members overtime at 1.5 times their regular rates, Stonegate violated the FLSA. 29 U.S.C. § 207(a).

92. Stonegate owes Sanchez and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

93. Stonegate owes Sanchez and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

94. Likewise, Stonegate owes Sanchez and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which she worked over 40 hours in the week, but were not paid in full for all hours.

95. Stonegate knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

96. Because Stonegate knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Stonegate owes these wages for at least the past three years.

97. Stonegate's failure to pay overtime compensation to Sanchez and the FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

98. Because Stonegate's decision not to pay overtime was not made in good faith, Stonegate also owes Sanchez and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

99. Accordingly, Sanchez and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

**RELIEF SOUGHT**

Sanchez prays for judgment against Stonegate as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order finding Stonegate liable for violations of federal wage laws with respect to Sanchez and all FLSA Collective members covered by this case;

    c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Sanchez and all FLSA Collective members covered by this case;

    d. For an equitable accounting and restitution of wages due to Sanchez and all FLSA Collective members members covered by this case;

    e. For a judgment awarding attorneys' fees to Sanchez and all FLSA Collective members covered by this case;

    f. For a judgment awarding costs of this action to Sanchez and all FLSA Collective members covered by this case;

    g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Sanchez and all FLSA Collective members covered by this case; and

    h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
 **Matthew S. Parmet**
 TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Paul M. Botros, Esq.**
TX Bar No. 24040548
**MORGAN & MORGAN, P.A.**
8581 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) 327-5352
Facsimile: (954) 327-3017
E-mail: pbotros@forthepeople.com

**Attorneys for Plaintiff**